SHARON STERLING,

              Plaintiff,

     v.

NEW JERSEY AQUARIUM, LLC, and
HARVARD SERVICES GROUP, INC.,

          Defendants.

1:18-cv-390-NLH-KMW

**OPINION**

**APPEARANCES**:

JEFFREY D. SCHAFFER
KENNETH S. SAFFREN
SAFFREN & WEINBERG
851 GREENWOOD AVENUE, SUITE 22
JENKINTOWN, PENNSYLVANIA 19046

    *On behalf of Plaintiff*

HEATHER M. EICHENBAUM
SPECTOR GADON & ROSEN, PC
1635 MARKET STREET, 7th FLOOR
SEVEN PENN CENTER
PHILADELPHIA, PENNSYLVANIA 19103

ELIZABETH TINA VRACHNAS
LONDON FISCHER
59 MAIDEN LANE, FLOOR 41
NEW YORK, NEW YORK 10038

    *On behalf of Defendants*

**HILLMAN**, District Judge

    This matter comes before the Court on the Motion to Dismiss
filed by Defendant Harvard Services Group, Inc. ("Harvard
Services"). [Docket No. 48.] For the reasons set forth below,

Harvard Service's Motion will be denied.

**BACKGROUND**

This case stems from Plaintiff Sharon Sterling's slip-and-fall while at the New Jersey Aquarium ("the Aquarium"). Plaintiff, who at all relevant times was a citizen and resident of Pennsylvania, alleges that on or about November 14, 2015, she visited the Aquarium (also known as the Adventure Aquarium) in Camden, New Jersey, as an invitee. [Docket No. 39, ¶¶ 2, 12.] Plaintiff alleges that she "was caused to fall when descending a stairway" that had "rock candy" on it. [Id. ¶ 13.] She also alleges that the stairway in question, which was "at or near the hippopotamus exhibit," "failed to have the proper railings or safety protection to protect [her] from the fall." [Id. ¶¶ 13-14.]

Plaintiff alleges that Defendants, who "were responsible for the inspection, care, custody, control, cleaning and maintenance of the subject premises and steps," "had actual and/or constructive notice of the dangerous conditions created by a reasonably foreseeable risk of injury to the public." [Id. ¶ 15.] She claims that Defendants failed to adequately maintain the area, to provide sufficient warnings, and to adequately inspect and clean the area. [Id. ¶ 17.] She also claims that Defendants created the dangerous conditions that led to her injury. [Id.]

Plaintiff claims that because of Defendants' alleged carelessness and negligence she sustained personal injuries to various body parts, as well as "severe shock and trauma to her nerves and nervous system." [Id. ¶ 19.] As a result, she alleges that she has sustained "great mental anguish and physical pain and loss of enjoyment of life," all of which she will continue to suffer from "for an indefinite time in the future." [Id.] She also alleges that she has encountered various medical expenses, which will continue into the future, and she has suffered "a loss of earnings and/or earning power," which may too continue into the future. [Id. ¶¶ 20-21.]

Plaintiff initially brought this case in the Superior Court of New Jersey, Camden County, Law Division on November 17, 2017. [Docket No. 1-2.] The original complaint listed several defendants, including several fictitious defendants (John Does 1-6). [Id.] Harvard Services was not one of the listed defendants. [Id.] The Complaint identified John Does 1-3 as "corporations or other duly authorized legal entities in the State of New Jersey which were responsible for the management, day to day operation, supervision and overall operation of the subject premises." [Id. ¶ 9.] It identified John Does 4-6 as "corporations or duly authorized legal entities operating in the State of New Jersey responsible for security, safety and well being of business invitees and/or pedestrians traversing on the

subject premises of the Defendants." [Id. ¶ 10.]

On January 10, 2018, the case was removed to this Court.
[Docket No. 1.]  The next day, the case was referred to
arbitration, which was evidently unsuccessful, and its initial
conference was scheduled for March 1, 2018.  [See Docket.]  The
parties began to engage in discovery and on or about June 20,
2018, the Aquarium responded to Plaintiff's interrogatories with
specific information about the Aquarium's retention of Harvard
Maintenance, Inc. ("Harvard Maintenance") to provide third-party
cleaning services.[1]  [Docket No. 49, Ex. D, ¶¶ 2-3 (stating that
the Aquarium "ha[d] a contract pursuant to which a cleaning
company, Harvard Maintenance, does regular cleaning and
housekeeping").]

Then, on August 16, 2018, Plaintiff sent a letter to the
Aquarium seeking additional information about Harvard
Maintenance.  [Docket No. 48-6.]  The Aquarium responded via
letter on September 4, 2018, stating, "[T]he Harvard Maintenance
contract you have requested is that of Harvard Services and is
protected by a strict confidentiality agreement."  [Docket No.
48-7.]  The letter went on: "Thus, kindly direct a subpoena to

---

[1] Harvard Services alleges that "Plaintiff was made aware of
Harvard Services' relationship with [the] Aquarium" as a result
of the Aquarium's response to the interrogatories.  [Docket No.
48-1, at 2.]  The Court cannot accept this version of events to
be true, as the Aquarium's response mentioned only Harvard
Maintenance, and not Harvard Services.  [See Docket No. 48-5.]

Harvard Services if you wish to obtain a copy of same as my client is not at liberty to produce it.  Thank you."[2]  [Id.]

Next, on September 7, 2018, Plaintiff sought leave to file an amended complaint that included Harvard Maintenance as a defendant.  [Docket No. 11.]  The Court denied that motion without prejudice on procedural grounds.  [Docket No. 14.]  Plaintiff filed a corrected motion seeking to amend the complaint on November 7, 2018, which the Court granted on March 1, 2019.  [Docket Nos. 16, 19.]  On March 5, 2019, Plaintiff filed the First Amended Complaint, which named Harvard Maintenance as a defendant.  [Docket No. 20.]  The summons was issued to Harvard Maintenance on the same day.  [Docket No. 22.]

On March 19, 2019, the Aquarium filed a motion to dismiss.  [Docket No. 24.]  On March 20, 2019, the Aquarium responded to Plaintiff's inquiry as to the purpose of the motion to dismiss with a letter asserting that Plaintiff "was supposedly filing an Amended Complaint to add Harvard Maintenance as a defendant; not to complicate matters with two dozen new vague allegations."  [Docket No. 49, Ex. I.]

---

[2] Harvard Services, in its Motion to Dismiss, attempts to construe the text of the September 4, 2018 letter as having "advised Plaintiff in writing . . . that the actual entity that was contracted to provide janitorial services to the Aquarium was Harvard Services."  [Docket No. 48-1, at 2.]  While that may have been Defendant's intent, the letter is not as clear as Defendant suggests.

Based on that feedback, the parties stipulated on March 26, 2019, that Plaintiff be permitted to file a Second Amended Complaint. [Docket No. 25.] The Second Amended Complaint, which still named Harvard Maintenance as a defendant, addressed the Aquarium's concerns with the First Amended Complaint. [See id.; Docket No. 49, Ex. I ("In fact, I encourage you to [file a Second Amended Complaint] — such that we are on notice of what your client is actually alleging — so we can move this case along.").]

On April 9, 2019, Harvard Maintenance filed an application seeking additional time to respond to the Second Amended Complaint, which was granted the same day and gave Harvard Maintenance until April 23, 2019, to respond. [Docket Nos. 29-31.] On April 15, 2019, the Honorable Judge Williams held a telephone conference with the parties, during which Plaintiff was notified for the first time by Harvard Maintenance that Harvard Services was actually the correct defendant. [Docket No. 50, at 5.] In the call, Harvard Maintenance requested to be voluntarily dismissed as a defendant. [Id.] It made the same request in an April 17, 2019 letter, which said that "Harvard [Maintenance] had no involvement in this action, as it never provided, nor contracted to provide, services to the co-defendant, Aquarium, at any time." [Docket No. 49, Ex. K.]

At this point, Plaintiff's counsel researched the location

and corporate information of Harvard Services and found that its

and Harvard Maintenance's corporate headquarters were at the

same address in Miami[3] and that they shared another address in

Iselin, New Jersey.[4] [Docket No. 49, Exs. G and L.] Then, on

April 23, 2019, Harvard Maintenance sent a letter to Plaintiff

asserting that Harvard Maintenance and Harvard Services were

"two distinct and separate entities." [Id., Ex. M.] Attached

to that letter were various corporate documents that showed,

among other things, that the two entities share a corporate

executive.[5] [Id.] Further research revealed that Harvard

Services's website states that "Harvard Services Group is a

strategic partner of Harvard Maintenance." [Id., Ex. O.]

Also on April 23, 2019, counsel for Harvard Maintenance

stated in an email to Plaintiff's counsel, "I have spoken to my

client and they will agree to stipulate to the amendment to add

Harvard Services as a direct defendant, so long as the

stipulation includes language that this will not be deemed a

waiver of the statute of limitations and that it will not be

---

[3] This address is 201 South Biscayne Boulevard, 24th Floor, Miami, Florida 33131. [See Docket No. 49, Exs. G and L.]

[4] This address is 33 S. Wood Ave., Suite 600, Iselin, New Jersey 08830. [See Docket No. 49, Exs. G and L.]

[5] Namely, Nathalie R. Doobin is the Vice President of Harvard Maintenance and the CEO of Harvard Services. [Docket No. 49, Ex. M.]

precluded from moving to dismiss in the future, if necessary."
[Id., Ex. P.]  Plaintiff's counsel sought clarification as to
whether opposing counsel was representing both Harvard
Maintenance and Harvard Services, given that counsel had agreed
to a stipulation that directly invoked Harvard Services as a
defendant.  [Docket No. 50, at 6-7.]  Counsel responded by
stating, "We represent Harvard Maintenance.  However, while I
cannot state with certainty, given the facts and circumstances
of this case, it is possible that we will be retained to
represent Harvard Services in the event claims are brought
against it."[6]  [Docket No. 49, Ex. Q.]  Indeed, this turned out
to be the case, as the same counsel represented both Harvard
Maintenance and Harvard Services.  [See Docket.]

As a result of the above circumstances, Plaintiff's counsel
agreed to voluntarily dismiss Harvard Maintenance as a party to
this action on April 24, 2019, and the late Honorable Jerome B.
Simandle ordered said dismissal on April 25, 2019.  [Docket Nos.
36-37.]  Then, on May 1, 2019, Plaintiff and the Aquarium
entered into yet another stipulation, permitting Plaintiff to
file her Third Amended Complaint.  [Docket No. 38.]  The Third

---

[6] It is difficult to reconcile this statement with actions taken
by counsel two weeks before making the above assertion.  On
April 9, 2019, Counsel filed two items on the docket on behalf
of "Defendant Harvard Services Group, LLC i/s/h/a 'Harvard
Maintenance.'" [Docket Nos. 29-30.]

Amended Complaint, which is the operative complaint in this case, was filed on May 2, 2019, and named Harvard Services as a defendant. [Docket No. 39.] The summons was served on Harvard Services on May 6, 2019. [Docket No. 43.] On May 28, 2019, the Court granted Harvard Services an extension to respond to the Third Amended Complaint [Docket No. 47], and on June 11, 2019, Harvard Services timely filed the present Motion to Dismiss [Docket No. 48].

In its Motion to Dismiss, Harvard Services argues that the statute of limitations bars this suit. [See id.] Plaintiff's timely filed Response argues that the relation back doctrine applies here, thereby precluding the action from being dismissed on statute of limitations grounds.[7] [See Docket No. 50.] Harvard Services addresses those arguments in both its initial Motion and its timely filed Reply [Docket No. 52].

## JURISDICTION

The Court exercises jurisdiction over this case pursuant to 28 U.S.C. § 1441. Diversity exists because Plaintiff is a citizen of Pennsylvania while the named defendants are citizens

---

[7] Plaintiff also alleges that she would have timely named Harvard Services as a defendant if not for the Aquarium's repeated misrepresentations and concealment of Harvard Services' identity. [See Docket No. 50, at 1.] However, Plaintiff's brief does not flesh out this legal theory as a separate ground for denying the Motion to Dismiss, so the Court will not address it as one. [See generally id.]

of Missouri, Florida, and New Jersey. The amount-in-controversy requirement is also met as the parties concede the amount in controversy at the time of the removal exceeded $75,000. Therefore, the Court has jurisdiction over this matter.

**DISCUSSION**

**A.    Motion to Dismiss Standard**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" is insufficient to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286, (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well

as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012).  When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. FED. R. CIV. P.

12(b).

## B.   Statute of Limitations

It is undisputed in this case that the incident in question took place on November 14, 2015.  It is also undisputed that, in New Jersey, the statute of limitations in negligence actions expires two years after the date of the alleged injury.  N.J. STAT. ANN. § 2A:14-2.  Therefore, it is undisputed that the statute of limitations expired in this case on November 14, 2017. Plaintiff did not name Harvard Services as a defendant in this case until she filed her Third Amended Complaint on May 2, 2019, nearly 18 months after the expiration of the statute of limitations.  Therefore, Harvard Services argues that any claims asserted against it must be barred by the statute of limitations.

As noted above, Plaintiff relies on Federal Rule of Civil Procedure 15(c)'s relation back doctrine to oppose Harvard Services' Motion.  The Court agrees with Plaintiff's argument and will therefore deny Harvard Services' Motion.

## A.   Relation Back Doctrine

Federal Rule of Civil Procedure 15 ("Rule 15") governs amended and supplemental pleadings.  Subsection (c) provides for three circumstances in which "[a]n amendment to a pleading relates back to the date of the original pleading."  FED. R. CIV. P. 15(c)(1).  The effect of this doctrine is to preclude an

amended pleading from being barred by the statute of
limitations.  It is relevant when a pleading that was filed
prior to the expiration of the statute of limitations is amended
after the expiration of the statute of limitations.  If Rule
15(c) is satisfied in a case, then the amended pleading will
relate back to the original pleading for statute of limitations
purposes — in other words, a party opposing the amended pleading
will not be able to successfully argue that it is barred by the
statute of limitations.

Only two of the three circumstances under Rule 15(c) apply
to a case in which a new party is added to a suit after the
expiration of the statute of limitations.  See FED. R. CIV. P.
15(c)(1)(A), (C).  In this case, the parties dispute whether
either of those circumstances applies.  Because the Court will
rule that Rule 15(c)(1)(C) is satisfied here, it need not
address the parties' arguments about Rule 15(c)(1)(A).[8]

### 1.    Rule 15(c)(1)(C)

Rule 15(c)(1)(C) provides for the relation back of an

---

[8] Federal Rule 15(c)(1)(A) applies when "the law that provides
the applicable statute of limitations allows relation back."
FED. R. CIV. P. 15(c)(1)(A).  In this case, the statute of
limitations is governed by Section 2A:14-2 of the New Jersey
Statutes, and New Jersey Court Rules 4:9-3 and 4:26-4 provide
for relation back under the fictitious party pleading doctrine.
The Court reserves judgment on whether New Jersey Court Rules
4:9-3 and 4:26-4, and therefore Federal Rule 15(c)(1)(A), are
satisfied here.

amended pleading when certain elements are met.  Interpreting an

old version of that rule in Schiavone v. Fortune, the Supreme

Court of the United States laid out four such elements:

> (1) [T]he basic claim must have arisen out of the
> conduct set forth in the original pleading; (2) the
> party to be brought in must have received such notice
> that it will not be prejudiced in maintaining its
> defense; (3) the party must or should have known that,
> but for a mistake concerning identity, the action
> would have been brought against it; and (4) the second
> and third requirements must have been fulfilled within
> the prescribed limitations period.

477 U.S. 21, 29 (1986).

In this case, the parties' analyses revolve around the

Schiavone elements.  [See Docket No. 48-1, at 10 (Harvard

Services); Docket No. 50, at 9 (Plaintiff).]  However, Rule 15

was amended in 1991 specifically "to change the result in

Schiavone" because it "was inconsistent with the liberal

pleading practices secured by Rule 8."  See FED. R. CIV. P. 15(c),

Advisory Committee Notes (1991 Amendment); Jacobsen v. Osborne,

133 F.3d 315, 319-20 (5th Cir. 1998).  Specifically, the fourth

element was changed, with the goal of making it so an added

party need not receive notice within the limitations period, but

rather merely within the parameters set out by Rule 4(m).  See

Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469 (2d Cir.

1995), modified by 74 F.3d 1366 (2d Cir. 1996); Skoczylas v.

Federal Bureau of Prisons, 961 F.2d 543, 545 (5th Cir. 1992).

The current rule — which was further amended in ways that do not

14

affect this analysis in 1993, 2007, and 2009 — allows for a

pleading to relate back to the date of the original pleading

when:

> the amendment changes the party or the naming of the
> party against whom a claim is asserted, if Rule
> 15(c)(1)(B) is satisfied and if, within the period
> provided by Rule 4(m) for serving the summons and
> complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that
>> it will not be prejudiced in defending on
>> the merits; and
>> (ii) knew or should have known that the
>> action would have been brought against it,
>> but for a mistake concerning the proper
>> party's identity.

FED. R. CIV. P. 15(c)(1)(C).

As one can see, Rule 15(c)(1)(C) implicates Rule

15(c)(1)(B) and Rule 4(m).  Rule 15(c)(1)(B) requires that "the

amendment asserts a claim or defense that arose out of the

conduct, transaction, or occurrence set out — or attempted to be

set out — in the original pleading."  FED. R. CIV. P. 15(c)(1)(B).

Rule 4(m) requires that a defendant be served within 90 days of

the complaint being filed, unless "the plaintiff shows good

cause" for failing to meet that deadline, in which case "the

court must extend the time for service for an appropriate

period."  FED. R. CIV. P. 4(m).  Therefore, after the relevant

changes to Rule 15(c)(1)(C), the four elements that must be met

for relation back to apply are: (1) the amendment asserts a

claim or defense that arose out of the conduct, transaction, or

occurrence set out — or attempted to be set out — in the original pleading; (2) the party to be brought in by the amendment received such notice of the action that it will not be prejudiced in defending on the merits; (3) the party to be brought in by amendment knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity; and (4) the third and fourth requirements must have been fulfilled within 90 days after the original complaint was filed, or longer if good cause is shown. See FED. R. CIV. P. 15(c)(1)(C); FED. R. CIV. P. 4(m); see also Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 194 (3d Cir. 2001).

There can be no dispute that the first element is met in this case. Therefore, only the second, third, and fourth elements are in dispute here. It is the fourth element that the parties mischaracterize in their briefings. For instance, Harvard Services incorrectly asserts that it "must have received notice of Plaintiff's action within 90 days of the filing of the complaint, as per [Rule] 15(c)(1)(C), or within the statute of limitations period." [Docket No. 48-1, at 13-14.] In its Reply brief, Harvard Services, incorrectly relying on a case that was decided under an old version of Rule 4(m), states that the second and third elements must have been satisfied "within 120 days after the filing of the complaint." [Docket No. 52-1, at

16

5.] Meanwhile, Plaintiff also misses the mark wrongly asserting that because she "satisfied the second and third prongs of the relation back test, [she] . . . has similarly satisfied the fourth prong of the relation back test, as the notice requirement has been met." [Docket No. 50, at 17.]

In actuality, as outlined above, the second and third elements must have been satisfied <u>either</u> within 90 days of the complaint being filed <u>or</u> within a longer time period if good cause exists. While the parties spend significant portions of their briefs arguing whether and when Harvard Services received imputed notice, see Docket No. 48-1, at 11 (Harvard Services) and Docket No. 50, at 11 (Plaintiff), the Court need not rely on imputed notice here, because Harvard Services received actual notice within the time limits prescribed by Rule 4(m).[9] Harvard Services received actual notice of this lawsuit on May 6, 2019. [Docket No. 43.] As the Court will explain in further detail below, good cause exists to extend the Rule 4(m) deadline to no earlier than that date. Therefore, the issue to resolve is whether the second and third elements were satisfied by May 6, 2019. They were.

---

[9] Therefore, the Court need not address the parties' arguments about whether notice to the Aquarium should be imputed to Harvard Services, and reserves judgment on that issue. However, the Court will hold <u>infra</u> that notice to Harvard Maintenance does constitute imputed notice to Harvard Services.

### a.   The Fourth Element: Rule 4(m) Timing

The Court will begin this analysis with the fourth requirement of the relation back test.  The purpose for discussing the final element first is that it dictates the time by which the second and third elements must have been satisfied. Typically, that date is easy to ascertain, since one option under Rule 4(m) is simply a 90-day deadline.  In cases where that option applies, no heavy lifting is required to determine the time by which the second and third elements must have been satisfied.  However, the deadline in this case will be determined subject to the other option under Rule 4(m): "[I]f the plaintiff shows good cause for the failure [to make service within 90 days], the court <u>must</u> extend the time for service for an appropriate period."  FED. R. CIV. P. 4(m) (emphasis added). Therefore, the Court must answer two questions.  First, does good cause exist for extending the deadline?  And second, how long an extension is "appropriate" under the circumstances of this case?  The answers to those questions are as follows: Yes, good cause exists, and an appropriate extension is to no earlier than May 6, 2019, the date that Harvard Services was served in this case.

The Third Circuit has interpreted Rule 4(m) to require a court to extend time for service if good cause exists.  <u>See</u> <u>McCurdy v. Amer. Bd. of Plastic Surgery</u>, 157 F.3d 191, 196 (3d

Cir. 1998); <u>Petrucelli v. Bohringer and Ratzinger</u>, 46 F.3d 1298, 1305 (3d Cir. 1995). The Third Circuit "has equated [Rule 4(m)'s] 'good cause' with the concept of 'excusable neglect' of Federal Rule of Civil Procedure 6(b)(2), which requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" <u>MCI Telecomms. Corp. v. Teleconcepts, Inc.</u>, 71 F.3d 1086, 1097 (3d Cir. 1995) (quoting <u>Petrucelli</u>, 46 F.3d at 1312 (Becker, J., concurring in part and dissenting in part))).

That standard is easily met here. Plaintiff initially included six John Doe defendants in this suit. The first indication that she received from the Aquarium — initially the only specifically named defendant — as to the identity of those John Doe defendants came in the form of the Aquarium's June 20, 2018 response to Plaintiff's interrogatories. The Aquarium's response stated that the Aquarium "ha[d] a contract pursuant to which a cleaning company, Harvard Maintenance, does regular cleaning and housekeeping." [Docket No. 49, Ex. D, ¶¶ 2-3.] This was the first time that Plaintiff was made aware of Harvard Maintenance. Having received that information, Plaintiff then sought more information from the Aquarium about Harvard Maintenance on August 16, 2018. The Aquarium responded on September 4, 2018, that such information was in the possession

of Harvard Services, and not of the Aquarium.  The Aquarium's
response did not indicate that Harvard Maintenance was the wrong
defendant.

At this point, Plaintiff did its own research on Harvard
Maintenance and, attempting to add it as a defendant, filed a
motion to amend on September 7, 2018.  Two months later, the
Court dismissed that motion without prejudice for procedural
reasons; within two days, Plaintiff corrected those mistakes and
refiled the motion to amend.  The Court granted that motion
approximately four months later, on March 1, 2019.  Four days
after that, Plaintiff filed the First Amended Complaint, naming
Harvard Maintenance as a defendant for the first time.  Two
weeks after that, the Aquarium filed a motion to dismiss, which
focused on the substance of the First Amended Complaint, but
made no suggestion that Harvard Maintenance was the wrong
defendant.  Based on that issue, the parties agreed to allow
Plaintiff to file a Second Amended Complaint on March 26, 2019,
which still named Harvard Maintenance as the defendant.

It was not until April 15, 2019, that Plaintiff finally
learned that Harvard Services, and not Harvard Maintenance, was
the correct defendant.  After researching Harvard Services and
finding that it shared many characteristics with Harvard
Maintenance, Plaintiff agreed to voluntarily dismiss Harvard
Maintenance and file a Third Amended Complaint naming, for the

first time, Harvard Services as a defendant. That was filed on May 2, 2019, and was served on Harvard Services on May 6, 2019.

The above facts easily demonstrate a good faith effort made by Plaintiff to name the correct defendant in as timely a manner as possible. Be as it may that Harvard Services was not served until nearly 1.5 years after the suit was filed and 3.5 years after the incident in question, the delay is nothing more than a product of Plaintiff's excusable neglect — if it even reaches that level. Plaintiff diligently sought out the correct party. The necessarily lengthy nature of motions practice surely cannot be blamed on Plaintiff, nor can the fact that, despite her reasonable efforts, the Aquarium and Harvard Maintenance dragged their feet in indicating who the correct defendant was. The fact is that Plaintiff was made aware of Harvard Services' identity, named Harvard Services in the Third Amended Complaint, and served said complaint on Harvard Services all within a span of a mere three weeks.

Based on the above analysis, good cause exists here for extending the Rule 4(m) deadline. As a result, the Court is required to extend the deadline for a reasonable amount of time. Given Plaintiff's diligence and efforts to obtain Harvard Services' identity in spite of the Aquarium's and Harvard Maintenance's lack of forthrightness, the Court finds that extending the deadline to no earlier than May 6, 2019, is

reasonable.

Therefore, the deadline by which the second and third relation back elements must have occurred is May 6, 2019.

####     b.     The Second Element: Notice and Prejudice

The Court will next address whether the second element — that, by May 6, 2019, Harvard Services received such notice of the institution of the action that it was not prejudiced in maintaining a defense on the merits — has been met here.  This element has two parts, "notice and absence of prejudice, each of which must be satisfied."  Urrutia v. Harrisburg Cty. Police Dep't, 91 F.3d 451, 458 (3d Cir. 1996).

Harvard Services received actual notice of this suit on May 6, 2019, so the only remaining question is whether that notice was sufficient to not prejudice Harvard Services.  "The prejudice must be actual, not hypothetical."  Id. at 461 (citing Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989)); see also Bechtel, 886 F.2d at 652 (requiring in the context of opposing a motion to amend that the party "show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely" (quoting Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing, 663 F.2d 419, 426 (3d Cir. 1981))).

Harvard Services argues that it was prejudiced because by the time it received actual notice, which was nearly 1.5 years

22

after the suit was filed and 3.5 years after the incident
occurred, it had been "deprived of an opportunity to promptly
investigate the claims asserted against it by" Plaintiff.
[Docket No. 52-1, at 7.]  Specifically, it argues that even if
it is able to overcome the difficulty of locating identified and
located, "their memories will have likely faded" in the
intervening time.  [Id.]  It also points out the inherent
difficulty of the situation given that it no longer provides
services to the Aquarium.  [Id.]

In spite of the time that has passed since the incident in
question occurred, this case was still in the initial stages of
discovery as of May 6, 2019.  [See Docket No. 56 (ordering
pretrial factual discovery by December 6, 2019).]  Harvard
Services had the opportunity to fully participate in the
discovery process beginning in May, and they will continue to
have that opportunity as this case progresses.  The challenges
that Harvard Services suggests will result from its delay in
receiving notice, while they may in fact be borne out, are not
so substantial for the Court to hold that Harvard Services is
prejudiced.  There is insufficient evidence that this delay
unfairly disadvantaged or deprived Harvard Services of the
opportunity to present facts or evidence in its defense.

Therefore, the second element of the relation back test is
met.  Harvard Services received actual notice of this suit on

May 6, 2019, such that the it was not be prejudiced in maintaining a defense on the merits.  The Court will not, then, grant the Motion to Dismiss on that basis.  Instead, it will now turn to the third element of the relation back test.

### c.    The Third Element: Mistake

The third element of the relation back test requires that the party to be brought in by amendment knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.  As with the second element, this must have been true by May 6, 2019.  Here, because Harvard Services received actual notice of the institution of this suit on May 6, 2019, this element is met.

In fact, the latest that this element was satisfied was on March 19, 2019, the date on which Plaintiff's First Amended Complaint was served on Harvard Maintenance.  This is because the notice that Harvard Maintenance received of this suit can be imputed to Harvard Services.  Briefly, one way in which notice to one party can be imputed to another entity is called identity of interest.  "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to another."  Singletary, 266 F.3d at 197 (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1499, at 146 (2d ed. 1990)); Garvin v.

City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003) (quoting the same); see also Schiavone, 477 U.S. at 29 ("Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party.").

Identity of interest applies in this case, as between Harvard Maintenance and Harvard Services. They share multiple addresses as well as one corporate executive. These basic facts indicate that any action filed against one of the parties constitutes notice of the litigation to the other party.

Therefore, when Plaintiff mistakenly named Harvard Maintenance as a defendant in the First Amended Complaint, Harvard Services knew or should have known that the action would have been brought against it, but for Plaintiff's mistake concerning the correct identity. Even if identity of interest did not apply here, the third element would still be satisfied because, at the risk of stating the obvious, Harvard Services knew or should have known that it was the proper defendant by May 6, 2019, because it was properly served as a defendant in this case on May 6, 2019.

Therefore, under multiple theories, the third element of the relation back test is satisfied here: by no later than May 6, 2019, Harvard Services knew or should have known that this action would have been brought against it, but for Plaintiff's

mistake.

## CONCLUSION

In summary, all four elements of the relation back test
have been met here, meaning that the statute of limitations does
not bar Plaintiff's complaint as against Harvard Services.
Therefore, Harvard Services' Motion to Dismiss will be denied.
An accompanying order shall issue.


March 6, 2020                          s/Noel L. Hillman
DATE                                   NOEL L. HILLMAN, U.S.D.J.